IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MOSES JACKSON, | ) | |
| AIS #228710, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:17-CV-414-ALB |
| | ) | (WO) |
| | ) | |
| EDDIE COOK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Moses Jackson, a state inmate, challenging the constitutionality of the decision to deny him parole entered on November 15, 2016.  Doc. 1 at 5–6.  Jackson names Eddie Cook and Lyn Head, members of the Alabama Board of Pardons and Parole who voted to deny him parole, and the Secretary of the Board at the time of the challenged decision, subsequently identified as Sandra Cochran, as defendants.  As Jackson does not state otherwise and upon its liberal construction of the complaint, the court construes the complaint to seek relief from the defendants in both their official and individual capacities.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

In his complaint, Jackson alleges the challenged decision to deny parole deprived him of due process and violated his right to equal protection because defendant Head did not initially provide her reasons for denying parole and defendants Cook and Cochran failed to ensure the record contained Head's reasons prior to issuing the decision to deny parole. Doc. 1 at 5–6. Jackson seeks a declaratory judgment, injunctive relief in the form of his release on "a full pardon" and monetary damages from the defendants for the alleged violations of his constitutional rights. Doc. 1 at 4.

The defendants filed a special report and relevant evidentiary materials in support of their report—including affidavits and parole records—addressing the claims presented by Jackson. Doc. 16 & Docs. 16-1 through 16-5. In these filings, the defendants deny they acted in violation of Jackson's constitutional rights in denying him parole. Specifically, the defendants deny depriving Jackson of a liberty interest in parole protected by due process and further maintain they did not grant Jackson parole because "(1) the severity of [his] present offense is high, and [their determination that] (2) [his] release will depreciate [the] seriousness of [his] offense or promote disrespect for the law." Docs. 16-2 at 2 & 16-3 at 2; *see also* Docs. 16-4 & 16-5. In addition, defendant Head avers she simply made a "clerical error" in her initial omission of reasons for the denial of parole. Doc. 16-2 at 2.

The court issued an order directing Jackson to file a response to the arguments set forth by the defendants in their special report and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. Doc. 17 at 2. This order specifically cautioned the parties "that,

**unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken**, . . . the court may at any time [upon expiration of the time for the plaintiff to file a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 17 at 2–3 (emphasis in original).  Jackson filed affidavits and supporting evidentiary materials in response to the defendants' report. Docs. 19 & 19-1 through 19-3; Docs. 20 & 20-1 through 20-2.

Pursuant to the directives of the above described order, the court deems it appropriate to treat the defendants' special report as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the responses filed by the plaintiff, the court concludes that under applicable federal law summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other

materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that

summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *see also* Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice, there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant and materiality is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]"  *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and

uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).  In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  "The mere existence of some factual dispute

will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Jackson has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III.  IMMUNITY FROM DAMAGES

### A.  Official Capacity Claims – Sovereign Immunity

To the extent Jackson requests monetary damages from the defendants in their official capacities, they are entitled to sovereign immunity. Official capacity lawsuits against state employees are "in all respects other than name, . . . treated as a suit against

the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has

held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by
> private parties against States and their agencies [or employees]. There are
> two exceptions to this prohibition: where the state has waived its immunity
> or where Congress has abrogated that immunity. A State's consent to suit
> [via waiver of immunity] must be unequivocally expressed in the text of [a]
> relevant statute. Waiver may not be implied. Likewise, Congress' intent to
> abrogate the States' immunity from suit must be obvious from a clear
> legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks

and citations omitted).  Thus, a state official may not be sued in his/her official capacity

unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School*

*& Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's

immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states
> that "the State of Alabama shall never be made a defendant in any court of
> law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized
> that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (holding

consent to suit is prohibited by the Alabama Constitution).  "Alabama has not waived its

Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v.*

*Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916

F.2d 1521, 1525 (11th Cir.1990)).  The defendants "may not be sued in [their] official

capacity unless the state has waived its Eleventh Amendment immunity or unless Congress

has abrogated the state's immunity." *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir.

2016).   In light of the foregoing, because "Congress has not abrogated Alabama's immunity, and Alabama has not waived its Eleventh Amendment Immunity," defendants Cook, Head and Cochran "are immune from claims brought against them in their official capacities."  *Id*. at 1234 (citations omitted); *Selensky*, 619 F. App'x at 849 (same); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B.  Individual Capacity Claims – Quasi-Judicial Immunity

With respect to any request for monetary damages from the defendants in their individual capacities arising from actions relative to the parole consideration process and/or entry of the decision to deny parole, Jackson is likewise entitled to no relief.  The Eleventh Circuit has long recognized that individual parole board officials "are entitled to absolute quasi-judicial immunity from a suit for damages" based upon decisions to grant, deny or revoke parole.   *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005); *Fuller v. Georgia State Board of Pardons and Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v. Skelton,* 502 F.2d 1101, 1101–02 (5th Cir. 1974).  All of the actions about which Jackson complains relate to the validity of a decision to deny parole executed in November of 2016.  Under these circumstances, the actions of the defendants are inextricably intertwined with the decision-making authority of the parole board and they are therefore immune from

damages.  Consequently, Jackson is not entitled to monetary damages from the defendants in their individual capacities.  *Holmes*, 418 at 1258.

## IV.  CLAIMS FOR RELIEF[2]

### A.  Undisputed Material Facts

Jackson is currently confined in the custody of the Alabama Department of Corrections on a sentence of life imprisonment imposed upon him in 2003 by the Circuit Court of Calhoun County, Alabama for convictions of attempted murder and three counts of first degree robbery.  The parole decision relevant to this cause of action occurred on November 15, 2016, Doc. 16-4, as supplemented on September 28, 2017, Doc. 16-5.  After the parole consideration hearing on November 15, 2016, the defendants issued a denial of parole in which defendant Cook provided his reasons for the denial of parole but defendant Head inadvertently omitted providing her reasons for the denial of parole.  Doc. 16-4.  On September 28, 2017, during an open public meeting, defendant Head corrected her prior "clerical error" and provided her reasons for the denial of parole.  Doc. 16-2 at 2 & Doc. 16-5.  The record is undisputed that the denial of parole occurred because the voting members of the Parole Board did not believe Jackson constituted an acceptable risk for

---

[2] In accordance with well-settled law, the court limits its review to the allegations set forth in the complaint and will not consider additional theories of liability presented in response to the defendants' special report. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x 905, 909–10 (11th Cir. 2012) (holding that a plaintiff may not amend the complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court properly refused to address a new theory of liability raised during summary judgment because the plaintiff had not amended the complaint with respect to the theory and therefore holding that such a claim was not properly before the court on appeal).

release on parole due to the severity of his crime(s) and their determination that his release on parole would depreciate the serious nature of his offense(s) or promote a lack of respect for the law.  Doc. 16-4 & Doc. 16-5.

## B.  Due Process

In this complaint, Jackson seeks relief for an alleged lack of due process afforded to him during the parole consideration process which resulted in the denial of parole on November 15, 2016.  Specifically, Jackson alleges because defendant Head did not at that time provide her reasons for denying parole as directed by state law she deprived him of his liberty interest in parole protected by due process.  Doc. 1 at 5–6.  He also asserts that defendants Cook and Cochran deprived him of due process when they failed to ensure the record contained reasons for the denial of parole by each voting member prior to entry of the decision to deny parole as required by the administrative rules of the parole board.  Doc. 1 at 5–6.

The defendants adamantly deny that Jackson has a liberty interest in parole protected by due process.  Doc. 16 at 8.  In addition, the defendants maintain that Jackson's requests for relief outside of monetary damages regarding the reasons for Head's denial of parole are now moot as defendant Head provided her reasons for denying parole on September 28, 2017.  Doc. 16 at 12.

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination.  It

does not contain any language that mandates parole. . . .  When the statute is framed in discretionary terms there is not a liberty interest created. . . .  Alabama parole statutes do not create a liberty interest [in parole]."  *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's exhaustive review of the history of the Alabama statute governing release on parole establishes that from its inception until the present date the statute has been framed in discretionary terms.[3]  The law is well-settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process. . . .' . . . [In addition],

---

[3] Section 15-22-26 of the Alabama Code, effective as of January 30, 2016, governed the authority of the Alabama Board of Pardons and Paroles to grant parole to Jackson.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but *only if the Board of Pardons and Paroles is of the opinion that the prisoner meets the criteria and guidelines established by the board to determine a prisoner's fitness for parole.*  The guidelines shall serve as an aid in the parole decision process and shall promote the use of prison space for the most violent and greatest risk offenders. . . .  The guidelines shall . . . include, but not be limited to, the following:
> (1) The prisoner's risk to reoffend, based upon a validated risk and needs assessment as defined in Section 12-25-32;
> (2) Progress by the prisoner and the Department of Corrections to plan for reentry;
> (3) Input from the victim or victims, the family of the victim or victims, prosecutors, and law enforcement entities;
> (4) Participation in risk-reduction programs while incarcerated;
> (5) Institutional behavior of the prisoner while incarcerated; and
> (6) Severity of the underlying offense for which the prisoner was sentenced to incarceration.
> . . . .
>
> The board shall clearly articulate its reasons for approval or denial of parole for each prisoner, based on its established guidelines, and shall provide the reasons for approval or denial to the prisoner . . .  *Additionally, the articulated reasons for denial of parole release shall not create a right or expectation for parole release. The guidelines shall serve as an aid in the parole decision making process, and the decision concerning parole release shall be at the complete discretion of the board*.

*Ala. Code* § 15-22-26(a)(c) (emphasis added).  The statute is clear that the decision to grant parole is within the sole discretion of members of the parole board and that parole is permitted only when board members, in their opinion, deem an inmate suitable for release on parole.

the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

To the extent the complaint can be construed to allege that the applicable parole statute creates a protected liberty interest in the procedures and rules applicable to parole consideration, he is likewise entitled to no relief as this claim is foreclosed by *Slocum.* In *Slocum*, the Eleventh Circuit deemed such a "unique theory . . . without merit." 678 F.2d at 942. The relevant portion of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions . . . create a protectable entitlement to parole consideration. Specifically, petitioner cites the requirement . . . that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language . . . that the board include in the parole file "as complete information as may be practically available. . . ." If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards. Petitioner's unique theory is without merit. Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness. *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S. Ct. 308, 50 L. Ed. 2d 283 (1976). In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws[, rules or regulations, as may be applicable]. The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date." Accordingly, in the instant case petitioner['s] . . . allegation that the . . . parole

14

board has not accorded him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 941–42.

As is clear from the foregoing, Jackson does not possess a liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution. *Heard v. Georgia State Board of Pardons and Paroles*, 222 F. Appx. 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941–42; *Thomas*, 691 F.2d at 488–89. Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions."). Thus, the due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488–89, or the parole consideration process. *Slocum*, 678 F.2d at 942 (holding that failure to provide parole review within the time required under parole rules or properly calculate presumptive date of release on parole as required by such rules does not constitute a violation of due process).

As explained, an Alabama inmate has no liberty interest in parole protected by the Due Process Clause. Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] . . . these interests will be

generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).  "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting a statement of reasons] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Dep't of Corrs.*, 186 F.3d 407, 412 (3d Cir. 1999).

Defendant Head avers that her omission of written reasons on the parole sheet occurred due to "a clerical error" which she later corrected.  Doc. 16-2 at 2 ("In reaching my vote to deny parole for Jackson [on November 15, 2016], a clerical error was made wherein no reasons for denial were marked on the Board Action Sheet corresponding with my vote.  On September 28, 2017, during [an] open public meeting, I corrected the clerical error and marked my reasons for voting to deny Jackson parole.").  The defendants further advise the decision to deny parole was based on determinations made by Cook and Head that Jackson did not present an acceptable risk for release on parole due to the serious nature of his current conviction(s) and because his release would depreciate the seriousness of such conviction(s) or promote disrespect for the law.  Doc. 16-2 at 2; Doc. 16-3 at 2; Doc. 16-5.

The decision of the parole board members demonstrates a reasonable and appropriate action, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988).  Jackson has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles, its members or secretary.  Moreover, it is clear to the court that the subsequent provision of reasons for the denial of parole by defendant Head renders any request for equitable relief with respect to provision of such reasons moot.  Because Jackson has failed to demonstrate a deprivation of any due process right to which he is entitled, summary judgment is due to be granted in favor of the defendants on this claim.

### C.  Equal Protection

Jackson alleges that the initial failure by defendant Head to provide him reasons for the denial of parole and the failure by the other defendants to ensure the provision of reasons by Head when executing the decision to deny parole violated his right to equal protection because other inmates were provided reasons for the denial of parole from each voting member.  Doc. 1 at 5 (The defendants "did not make sure the record contained reasons for my denial by each parole board member who gave vote, and that the order [to deny parole] was otherwise accurately executed[.]"); Doc. 1 at 6 ("Lyn Head[], denied my parole, and did not give reason, this action done by Lyn Head[] did not give me equal

protection of the laws.  There are other deny sheets [where both Cook and Head provided] their reasons for denying those individuals parole, but my deny sheet is not so[.]").

The law is clear that merely labeling an action violative of equal protection fails to state a claim on which relief may be granted.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed. . . .  The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'"  *Ross v. Moffitt*, 417 U.S. 600, 611–12 (1974); *Hammond v. Auburn University*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").

In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)."  *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318–19 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . .  Proof of . . . discriminatory intent or purpose is required to

show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–65 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required.  *Fuller*, 851 F.2d 1310. Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).  Intentional discrimination on the part of the defendants in providing the challenged disparate treatment is therefore required.   "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Jackson bears the burden of producing evidence which would be admissible at trial sufficient to show that the initial failure of the defendants to ensure the provision of reasons for the denial of parole from each voting member resulted

from intentional discrimination.  *Celotex*, 477 U.S. at 322–24; *Waddell*, 276 F.3d at 1279.

Jackson cannot rest on a conclusory allegation of a constitutional violation to defeat

summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of his

position" sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252; *Waddell*, 276

F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to

oppose summary judgment).  Instead, the law requires that Jackson present significant

probative evidence of intentional discrimination based on a constitutionally protected

interest to preclude entry of summary judgment in favor of the defendants on his equal

protection claim.  *Anderson*, 477 U.S. at 249.

Jackson simply alleges that other inmates received reasons for the denial of parole

from each voting member and he did not.  Doc. at 6.  As set forth above, this mere assertion

of a disparity in treatment among inmates fails to state a viable equal protection claim.

*McKleskey*, 481 U.S.at 292; *E & T Realty*, 830 F.2d 1114.  Thus, Jackson's equal protection

claim necessarily fails first for this reason.  In addition, this claim likewise provides no

basis for relief

> because [Jackson] has not alleged . . . that he was treated differently on
> account of some form of ***invidious discrimination*** tied to a constitutionally
> protected interest.  He has not even claimed that he was treated differently
> from others because of race, religion, or national origin.  *See Snowden v.
> Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497 (1944) ("The unlawful
> administration . . . of a state statute fair on its face, resulting in its unequal
> application to those who are entitled to be treated alike, is not a denial of
> equal protection unless there is shown to be present in it an element of
> intentional or purposeful discrimination."); *McQueary v. Blodgett*, 924 F.2d
> 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal
> protection rights were violated because he received a longer sentence than
> some other prisoners and holding that "a mere demonstration of inequality is

> not enough; the Constitution does not require *identical* treatment.  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises:  it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results."  (internal quotation marks omitted)); *see also Cruz v. Skelton*, 543 F.2d 86, 92–93 (5th Cir. 1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original).

The record before the court contains no evidence of any purposeful discrimination by defendant Head or the other defendants regarding the failure by Head to initially provide reasons for her decision to deny Jackson parole or in executing the denial of parole. Instead, the record demonstrates that the initial omission of reasons by Head and the lack of such reasons on the first notice of denial to Jackson were merely inadvertent errors in the parole consideration process, errors which were subsequently corrected when Head submitted her reasons for denial of parole and those reasons were properly executed.[4]  The omissions about which Jackson complains do not provide a basis for finding a violation of

---

[4] In an affidavit filed after the defendants filed their special report, Jackson presents additional theories of liability in support of his equal protection claim challenging the denial of parole.  Doc. 19 at 4 ("Defendants are not favoring parole to Jackson[,who abides by the rules, maintains community custody status and works in the community without posing any risk to the State's citizens,] . . . but are favoring parole to others who are (1) high risk by security level within ADOC, (2) who have pending felony case(s), and (3) who have committed serious ADOC prison rule violations – with possible free world charges.").  As previously noted, the court cannot consider these allegations since each constitutes a basis for liability not presented in the complaint.  *Supra* at 11, n.2.  Nevertheless, as set forth herein, Jackson's mere allegation that the defendants granted parole to other inmates he deems less deserving while denying him parole fails to state a cognizable equal protection claim as he does not allege nor present any evidence that the denial of parole was based on a constitutionally impermissible reason.  Moreover, it is undisputed that the defendant parole board members based their decision to deny parole on the seriousness of Jackson's current offenses and their determination that a grant of parole would have a depreciative impact on the seriousness of his offenses or promote disrespect for the law.  Thus, the record is devoid of evidence that the defendants denied parole due to purposeful discrimination.  Under applicable federal law, none of the allegations made by Jackson are sufficient to show an equal protection violation.

the Equal Protection Clause.  *E & T Realty*, 830 F.2d at 1114.  Consequently, the allegations of an equal protection violation entitle Jackson to no relief in this cause of action and summary judgment is due to be granted for the defendants on this issue.[5]

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment (Doc. No. 16) be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The parties bear their own costs.

On or before **June 19, 2020** the parties may file objections to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the proposed findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*,

---

[5]Again, defendant Head provided her reasons for denying parole on September 28, 2017, Doc. 16-5, thereby providing the only relief available to Jackson in this case.  *See Wilkinson v. Dotson*,  544 U.S. 74 (2005).

996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

      DONE this 4th day of June, 2020.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE